USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-11-10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JASON HOFELICH,

                Plaintiff,

-against-

SUPERINTENDENT ROBERT ERCOLE,
FACILITY HEATH SERVICE DIRECTOR
FREDERICK BERNSTEIN, DR. HARRY
MAMIS, SGT. STRASSER, RN ANTHONY
MILLER, and NA DON STEVENS,

                Defendants.
------------------------------------------------------------x

08 Civ. 2193 (PKC)(DFE)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

        Plaintiff Jason Hofelich brings this civil rights action pursuant to 42 U.S.C. § 1983, claiming that defendants were deliberately indifferent to his medical needs, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Defendants filed a motion styled as a motion for summary judgment, which actually was both a motion for summary judgment on the merits and a motion to dismiss plaintiff's complaint pursuant to Rule 37(b), Fed. R. Civ. P., for violations of the Court's discovery orders. For the reasons stated below, I grant defendants' motion for summary judgment, as modified below, and do not reach their motion to dismiss pursuant to Rule 37(b).

## BACKGROUND

I.   Factual History

        In considering the defendants' motion, I accept non-movant Hofelich's version of the facts, as set forth in his verified complaint, dated August 23, 2007, but filed on March 5, 2008, and a document titled "attachment," referred to and incorporated by reference therein,

which contains the majority of plaintiff's factual allegations (the "Complaint Attachment" or "Compl. Att."). I also accept any facts proffered by defendants that Hofelich does not dispute. I draw all reasonable inferences in favor of plaintiff as the non-movant.

Plaintiff is an inmate in the custody of the New York State Department of Correctional Services. He was transferred to Green Haven Correctional Facility ("Green Haven") on or about July 26, 2005. (Medical Records, attached as Exhibit M to the Declaration of Assistant Attorney General Julinda Dawkins, dated May 22, 2009 (the "Dawkins Decl.") at 495.) During the relevant time period, April 7 to April 12, 2006, plaintiff was housed in Green Haven's Special Housing Unit ("SHU"). (See generally, Undated Declaration of Raymond Koskowski (the "Koskowski Decl."); Compl. Att. at 1.)

At that time, defendant Robert Ercole was the Superintendent of Green Haven. (Compl. § I(B).) Defendant Frederick Bernstein has been the Facility Health Service Director at Green Haven since December 2003. (Declaration of Frederick Bernstein, dated May 22, 2009, (the "Bernstein Decl.") ¶ 2.) Defendant Harry Mamis is a doctor employed at the Fishkill Correctional Facility. (Compl. § I(B).) Defendant Allen Strasser is a Sergeant employed at Green Haven. (Id.) Defendant Anthony Miller is a registered nurse and defendant Donald Stevens is a nurse administrator. (Id.) Both are employed at Green Haven. (Id.)

According to the Complaint Attachment, on April 7, 2006, plaintiff began bleeding from his gums, and was continually spitting blood into his cell's toilet. (Compl. Att. at 1.) Plaintiff claims that he sought an emergency sick call, but no one came. (Id.) An hour later, plaintiff noticed that his nose began bleeding and he asked his "neighbors beside" him to call for help. (Id.) Corrections Officer Lamberton, who is not a defendant, spoke to plaintiff, and then "came back to notify [plaintiff] [that] he [spoke] to the SHU SGT." (Id.) Plaintiff does not

identify the SHU Sergeant. Corrections Officer Lamberton, together with another Corrections Officer, who is not a defendant, then brought plaintiff fresh bed linens. (Id.) Plaintiff claims that no Sergeant ever came to check on him, and that he then passed out "from lightheadedness." (Id. at 2.) According to the logs submitted by defendants, there is no record that plaintiff requested medical attention for a nose bleed on April 7, 2006. (Koskowski Decl. ¶ 7 and Exh. A attached thereto.)

The following day, April 8, 2006, at approximately 10:35 a.m., plaintiff notified a physician assistant that his nose was bleeding. (Compl. Att. at 2; Koskowski Decl. ¶ 8 and Exh. A attached thereto.) Later that morning, plaintiff spoke to Corrections Officer Lamberton again. (Compl. Att. at 2.) Plaintiff claims that Corrections Officer Lamberton said "he'd tell the SGT. again." (Id. (emphasis in original).)

According to plaintiff, approximately one hour later, defendant Sergeant Strasser asked plaintiff, "in an aggressive and threatening tone," what he wanted. (Id.) Plaintiff told Sergeant Strasser that he had been bleeding for 48 hours. (Id.) Thirty minutes later, Sergeant Strasser returned "and stated [that] he called medical and they said to plug [plaintiff's] nose." (Id.) Plaintiff then "stressed the facts and begged for medical attention," but, according to plaintiff, Strasser said that he did not care and again told plaintiff to plug his nose. (Id. at 2-3.)

Plaintiff claims that from April 8 through April 11, 2006, he was in and out of consciousness and continued to cough up blood clots. (Id. at 3.) On April 11, 2006, plaintiff was brought to Green Haven's clinic. (Id. at 3-4.) While plaintiff was in the clinic, Dr. Bernstein observed that plaintiff's nose had been packed and that plaintiff was "alert, responsive and animated in his interactions with medical staff." (Bernstein Decl. ¶ 18.)

- 3 -

Plaintiff was then transferred to the Putnam Hospital Center ("Putnam Hospital") emergency room. (Compl. Att. at 4.) He returned to Green Haven at some point on April 11, but a few hours later, he was sent back to the Putnam Hospital. (Id.) He spent several more days at Putnam Hospital, where he was diagnosed with a blood disorder known as Idiopathic Thrombocytopenic Purpura ("ITP"). (Id. at 4-6.)

According to plaintiff, a few months before this incident, he consulted Dr. Mamis about the fact that he was experiencing "swollen lower extremities," and that he had purple dots on his legs and ankles. (Id. at 1.) Plaintiff also alleges that if defendant Anthony Miller "would have reported to the SHU[,] I would not have suffered." (Id. at 6.)

Finally, plaintiff claims that that Superintendant Robert Ercole attempted to cover up the "malfeasance" of the other defendants, and that defendant Stevens "fixes the grievance responses to be favorable to those medical staff I grieved for misconduct." (Id. at 7-8.)

II. Procedural History

This lawsuit was consolidated, for discovery purposes, with plaintiff's two other actions pending before me. (Docket No. 5 at 1.) On October 17, 2008, Magistrate Judge Eaton issued an order granting leave for defendants to take plaintiff's deposition in this action, and another action, styled as Hofelich v. Ercole, No. 06 Civ. 13697 (PKC) (S.D.N.Y.) (the "2006 Action"). (Docket No. 15.) The defendants attempted to depose plaintiff concerning the allegations in this complaint on three separate occasions, but he did not cooperate. (See Dawkins Decl. Exhs. E through H.) Discovery in this case closed without the defendants having had a chance to depose plaintiff regarding his allegations in this case.

On May 26, 2009, defendants filed the pending motion. (Docket No. 24.) Accompanying their motion papers was the appropriate notice to a pro se litigant as required by

Local Civil Rule 56.2. (Docket No. 25.) On September 18, 2009, having not received any opposition to the defendants' motion, I issued an order informing plaintiff that if he did not submit opposition papers by September 28, 2009, I would adjudicate the defendants' motion as unopposed. (Docket No. 29.)

On October 1, 2009, I received a letter from plaintiff. The letter did not bear a caption or docket number, nor did it specifically refer to this action or any of plaintiff's other lawsuits. The substance of the letter was that plaintiff could not oppose the defendants' motion without the assistance of an attorney. I treated this as a request for appointed counsel, and denied it without prejudice to renewal of the application at a later date, if circumstances warranted. (Docket No. 30.) I also extended the date for plaintiff to submit an opposition to November 9, 2009. (Id.)

On November 12, 2009, plaintiff filed a document titled "Opposition for Summary Judgment." (Opposition for Summary Judgment, Hofelich v. Ercole, No. 06 Civ. 13697 (PKC) (S.D.N.Y. Nov. 12, 2009)). This document bore the caption of this case and the caption of the 2006 Action. Plaintiff did not respond to any of the defendants' arguments in his "opposition." (Id.) However, he did state that he had "no quam to cooperate with the disposition for 08 Civ. 2193. I am finished with 12 months of retaliatory solitary confinement." (Id. at 4.) Plaintiff then stated: "I oppose to [sic] the dismissal." (Id.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c), Fed. R.

Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Id. If the movant meets this burden, by asserting facts demonstrating that the non-movant's claim cannot be sustained, the non-movant must "set out specific facts showing a genuine issue for trial," and cannot rest on mere allegations or denials of the facts asserted by the movant. Rule 56(e)(2), Fed. R. Civ. P. This requires only "a limited burden of production," but, nevertheless, the non-movant "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (citing Aslanidis v. United States Lines. Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). Conclusory assertions contained in an affidavit or verified pleading, are not sufficient to create a genuine issue of fact. See Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks and citations omitted). The Court must read a pro se party's submissions liberally, especially when a defendant moves for summary

judgment on a pro se plaintiff's claims. See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment").

## II. Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishments, including punishments that involve the unnecessary and wanton infliction of pain. Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (quotation marks omitted). Under this proscription, which applies to the states through the Fourteenth Amendment, states may not deprive prisoners of their basic human needs, including medical care. See Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002). "While society does not expect that prisoners will have unqualified access to health care, an inmate can nevertheless prevail on an Eighth Amendment claim arising out of medical care by showing that a prison official acted with deliberate indifference to the inmate's serious medical needs." Hernandez, 341 F.3d at 144 (citations and internal quotation marks omitted).

The standard of deliberate indifference includes both objective and subjective components. First, the alleged deprivation must be sufficiently serious, in objective terms. A medical need is "sufficiently serious" so as to satisfy the objective prong of the deliberate indifference standard when it presents "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). Factors relevant to the "sufficiently serious" inquiry include: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citation and internal quotation marks omitted) (alteration in original). "Ultimately," the

Second Circuit has explained, "to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his [or her] confinement violate[d] contemporary standards of decency." Phelps, 308 F.3d at 185.

In addition to alleging a serious medical need, plaintiff must also allege that defendants disregarded that need with a sufficiently culpable state of mind; this is the subjective prong. Chance, 143 F.3d at 702. "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (citation and internal quotation marks omitted).

   a. Dr. Mamis

Plaintiff alleges that a few months prior to the April 2006 incident, he experienced "swollen lower extremities" and purple dots on his ankles and legs, and asked Dr. Mamis about it. (Compl. Att. at 1.) Assuming that these symptoms rise to the level of a serious medical condition, plaintiff has failed to satisfy the subjective element of a deliberate indifference claim. There is no allegation that Dr. Mamis ignored plaintiff's symptoms. At most, plaintiff has alleged that Dr. Mamis may have been negligent in failing to diagnose plaintiff's ITP (although plaintiff has not even alleged that swollen legs and purple dots are symptoms of ITP). "[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." Chance, 143 F.3d at 703. Therefore, Dr. Mamis is entitled to summary judgment in his favor.

### b. Nurse Miller

The only allegation regarding defendant Miller is plaintiff's conclusory allegation that "if RN Tony Miller would have reported to the SHU I would not have suffered." (Compl. Att. at 6.) And the only evidence that indicates defendant Miller was aware that plaintiff was bleeding is a grievance plaintiff filed on or about April 21, 2006. (Loren Decl. Exh. B at 357.) In that grievance, plaintiff states that his nose had been bleeding for over 24 hours when Sergeant Strasser relayed a message to him from defendant Miller. (Id.) The message was that plaintiff should pinch his nose for 15 minutes. (Id.) Even assuming that plaintiff's medical need was sufficiently serious, there are no facts from which a reasonable jury could conclude that defendant Miller disregarded an excessive risk to plaintiff's health or safety. In fact, plaintiff's grievance demonstrates that defendant Miller was not disregarding plaintiff's medical need, but was treating it. As with Dr. Mamis, Nurse Miller's failure to diagnose ITP would not amount to a cognizable violation of a constitutional or other federal right. Therefore, I will grant summary judgment in defendant Miller's favor.

### c. Dr. Bernstein

Plaintiff's allegations against Dr. Bernstein are difficult to understand. He alleges the following: "The signs were there documented that I had this disease, yet not until I was inches away from death was it addressed. Not voluntary, but made to acknowledged my serious illness. M.D. Frederick Bernstein on numerous grievances I authored." (Compl. Att. at 7.) Plaintiff also alleges that another doctor "will be a witness to Bernstein's indifference continuity [sic]." (Id. at 8.)

The conclusory allegation that Dr. Bernstein was indifferent is insufficient to state a deliberate indifference claim. Iqbal v. Ashcroft, 129 S. Ct. 1937, 1951 (2009) ("bare

assertions" that "amount to nothing more than a formulaic recitation of the elements" of a cause of action, "are conclusory and not entitled to be assumed true"). Setting that allegation aside, it appears that plaintiff's claim against Dr. Bernstein is based on the fact that he is Green Haven's Facility Health Service Director. Section 1983 liability, however, cannot be based on a theory of respondeat superior. Id. at 1948 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Because plaintiff has not come forward with facts which would allow a reasonable jury to find in his favor against Dr. Bernstein, Dr. Bernstein is entitled to summary judgment in his favor.

### d. Nurse Administrator Stevens

The sole allegation against defendant Stevens is that "he fixes the grievance responses to be favorable to those medical staff I grieved for misconduct." (Compl. Att. at 8.) Essentially, this is a claim that defendant Stevens interfered with plaintiff's grievance process. This allegation is not supported by any evidence. But, even if it were true, that interference could not form the basis of a section 1983 claim.

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'" Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)) (ellipsis in original). There is no constitutional right to an inmate grievance review process. See, e.g., Gilbert v. Goord, No. 9:03-cv-423 (GLS/GJD), 2007 WL 3232273, at *6 (N.D.N.Y. Oct. 31, 2007) ("Because the [inmate] grievance procedures are not constitutionally required, a state's violation of those procedures or its failure to enforce them does not give rise to a claim under section 1983."); Cancel v. Goord,

No. 00 CIV 2042 LMM, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983") (citations omitted). New York's inmate grievance review process was created by state law, not federal law. See N.Y. Correct. Law § 139 (2003); 7 N.Y. Code R. & Reg. § 701.5 (2009). Therefore, a violation of that grievance process cannot give rise to a section 1983 claim, and defendant Stevens is entitled to summary judgment in his favor.

e. Superintendent Ercole

Read liberally, the allegations against defendant Ercole that he attempts to cover up malfeasance by the other defendants may be construed to assert a claim for conspiracy. (Am. Pet. at 7.) To survive summary judgment on a motion for summary judgment, "a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Plaintiff's claim fails because he has not alleged and agreement between Ercole and another actor, nor has he provided any facts from which a jury could reasonably infer such an agreement. Therefore, defendant Ercole is entitled to summary judgment in his favor.

f. Sergeant Strasser

In the 2006 Action, plaintiff claims that Sergeant Strasser was deliberately indifferent to his medical needs on two occasions. In his deposition in the 2006 Action, he makes it clear that one of those occasions was Sergeant Strasser's alleged failure to address his bleeding nose and gums in April 2006, the same claim he makes against Sergeant Strasser in this litigation.

"[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2d Cir. 2000). Absent "special circumstances . . . that favor giving priority to the second" lawsuit, a district court should dismiss the second, duplicative suit in favor of the first. Taylor v. Rodriguez, 238 F.3d 188, 197 (2d Cir. 2001); Curtis, 226 F.3d at 138 ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."). Therefore, I dismiss plaintiff's claim against Sergeant Strasser without prejudice. The defendants' motion for summary judgment in the 2006 Action addresses plaintiff's claims of deliberate indifference against Sergeant Strasser, and I will decide the motion in that case.

## CONCLUSION

In accordance with the foregoing, defendants Ercole, Bernstein, Mamis, Miller and Stevens's motion for summary judgment (Docket No. 24) is GRANTED. The claims against Sergeant Strasser are DISMISSED WITHOUT PREJUDICE. The Clerk is directed to issue judgment in favor of the defendants and to close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       January 11, 2010